[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Davis*, Slip Opinion No. 2023-Ohio-161.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-161

IN RE APPLICATION OF DAVIS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Davis*, Slip Opinion No. 2023-Ohio-161.]

*Attorneys—Character and fitness—Application to register as a candidate for admission to the practice of law in Ohio and as a candidate to take the February 2023 Ohio bar exam—Past criminal conduct—Applicant has established present character, fitness, and moral qualifications by clear and convincing evidence—Application approved.*

(No. 2022-1604—Submitted January 10, 2023—Decided January 20, 2023.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 839.

_____

**Per Curiam.**

{¶ 1} Applicant, Damon Ray Davis, of Georgetown, Kentucky, is a 2022 graduate of the University of Cincinnati College of Law. Davis applied to register

as a candidate for admission to the Ohio bar and to take the February 2023 bar exam.

{¶ 2} Two members of the Cincinnati Bar Association Admissions Committee interviewed Davis in June 2022, and the committee issued provisional and final reports recommending that his character and fitness be approved. Because Davis had been convicted of two felonies, his application was submitted to the Board of Commissioners on Character and Fitness for review in accordance with Gov.Bar R. I(13)(D)(5)(a) and I(14).

{¶ 3} In October 2022, a three-member panel of the board conducted a hearing, during which it heard testimony from Davis. Thereafter, the panel issued a report finding that Davis had established his present character, fitness, and moral qualifications by clear and convincing evidence and recommending that he be permitted to sit for the February 2023 Ohio bar exam, provided he complies with all applicable procedures and requirements. In December 2022, the board unanimously adopted the panel's report and recommendation.

{¶ 4} The matter is before this court pursuant to Gov.Bar R. I(13)(D)(5)(b) because one of Davis's convictions would constitute a felony of the first degree under Ohio law. The parties have jointly waived objections, and Davis has filed a notice that he does not intend to ask this court to permanently seal any portion of the record in this case.

{¶ 5} An applicant for admission to the bar bears the burden of proving by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission. Gov.Bar R. I(13)(D)(1). An applicant may be approved for admission if the applicant satisfies the essential eligibility requirements for the practice of law as defined by the board and demonstrates that "the applicant's record of conduct justifies the trust of clients, adversaries, courts, and others." Gov.Bar R. I(13)(D)(3).

{¶ 6} A record that manifests a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute grounds for disapproval. *Id.* In determining whether the record demonstrates such a deficiency, we consider a number of factors set forth in Gov.Bar R. I(13)(D)(3). Among those factors are whether the applicant has been convicted of a felony or engaged in conduct reflecting a pattern of disregard of the laws of this or any other state. Gov.Bar R. I(13)(D)(3)(a) and (f). In determining the weight and significance to give an applicant's prior conduct, we consider several factors, including the recency of the conduct, the seriousness of the conduct, the factors underlying the conduct, whether there is evidence of rehabilitation, whether the applicant has made positive social contributions since the conduct, and the candor of the applicant in the admissions process. *See* Gov.Bar R. I(13)(D)(4)(b), (d), (e), (g), (h), and (i).

{¶ 7} In addition, when an applicant has been convicted of a felony, we consider (1) the amount of time that has passed since the applicant's conviction, (2) whether the applicant would be eligible to have his rights and privileges restored under Ohio law if he had been convicted of the same offense in this state, (3) whether the applicant is disqualified by law from holding an office of public trust, and (4) how approval of the applicant would impact the public's perception of, or confidence in, the legal profession. *See* Gov.Bar R. V(13)(D)(5)(a)(i) through (iv).

{¶ 8} Davis was arrested in Lexington, Kentucky, in November 2007. A federal grand jury later indicted him on charges of possession with the intent to distribute cocaine, crack cocaine, and marijuana; distribution of cocaine; and possession of a firearm in furtherance of a drug-trafficking crime.

{¶ 9} In April 2008, the United States District Court for the Eastern District of Kentucky accepted Davis's guilty plea to two charges—possession with the intent to distribute crack cocaine and possession of a firearm in furtherance of a drug-trafficking crime—and dismissed the remaining charges. In July 2008, that court sentenced Davis to 52 months in prison followed by four years of supervised

release and ordered him to forfeit $8,742, a 9-millimeter Ruger pistol, and a quantity of ammunition.

{¶ 10} During his character-and-fitness hearing, Davis testified that he was released from federal prison in October 2011 after serving roughly 50 months of his 52-month sentence. Following his release, he obtained employment at a factory in Lexington, Kentucky. He utilized the factory's tuition-reimbursement program to obtain a bachelor's degree in psychology. According to Davis, he maintained a 3.5 GPA during his undergraduate studies and earned a 4.0 GPA in the fall of 2018—all while working 12-hour overnight shifts five to six days a week.

{¶ 11} Davis testified that as he approached graduation, he contemplated his future and found himself looking back on his work in the prison library, where he had helped inmates with their appeals and tutored those who were studying for the GED. He stated that he had met people who could not read, write, or comprehend even the simplest concepts of the law and had realized that he was able to help them. Davis recalled an encounter with an inmate in his mid-80s who could not understand why his request for release to a halfway house had been denied. After talking with the inmate, Davis determined that the inmate could not read, and Davis was the first person who took the time to explain to the elderly inmate the reason for the denial in terms that he could understand. Davis testified that after he reflected on the personal satisfaction he had felt from helping his fellow inmates, he decided to pursue a career in law and dedicate his life to helping others.

{¶ 12} Davis was admitted to the University of Cincinnati College of Law, where he was awarded a scholarship and was preadmitted as a fellow for the Ohio Innocence Project. In his law-school application, Davis disclosed his felony convictions and several other brushes he had had with the law. He also described himself as a first-generation high school graduate. He explained that he had been educated in an urban school system that prepared students for surviving everyday challenges rather than preparing them for college success. Although he first

4

enrolled in a community college in the fall of 1995, he stated that he had struggled academically due in part to his poor study habits and concern about supporting himself and his family.

{¶ 13} In his law-school application, Davis also disclosed that his mother had been diagnosed with cancer during his first year of college (i.e., 1995 or 1996) and that he had taken a second job to help his family make ends meet. He stated that after his mother's death the next year, he dropped out of school to take care of his younger brother and support his own child. The board found that "[i]t was during this protracted absence from school, familial financial obligations, and personal crisis, that Davis found himself drawn to the allure of the drug culture," which eventually led to his November 2007 arrest.

{¶ 14} Davis disclosed his felony convictions and other run-ins with the law in the bar-admissions process. The admissions committee's attorney investigators thoroughly considered Davis's convictions and found him to be both candid and remorseful for his past conduct. The panel members and the board also found that Davis was forthright in his testimony during his character-and-fitness hearing. They were particularly impressed with his testimony that his incarceration had introduced him to the concept of "service," by showing him how rewarding and inspiring it can be to help others.

{¶ 15} At the time of his character-and-fitness hearing, Davis had been out of prison for more than a decade, and his term of supervised release expired no later than November 2015. There is no evidence that Davis violated any terms or conditions of his supervised release. And since his release from prison, Davis's only brush with the law has been a single minor traffic infraction.

{¶ 16} We turn now to the board's application of the factors enumerated in Gov.Bar R. I(13)(D)(5)(a)(i) through (iv). The board determined that since Davis's release from prison over a decade ago, *see* Gov.Bar R. I(13)(D)(5)(a)(i), service has been a hallmark of his life. It found that his dedication to service is reflected in his

marriage of almost eight years, his work at the Hamilton County Public Defender's Office, his work with inmates preparing for release from the Fayette County Kentucky jail, and in his service to his church where he started a GED tutoring program and serves as a mentor to young African-American men in his community.

{¶ 17} In considering whether Davis's rights and privileges have been restored by operation of law, expungement, or pardon, *see* Gov.Bar R. I(13)(D)(5)(a)(ii), the board determined that "[he]cannot seal his record of conviction as the same is a Federal conviction and expungement is unavailable." Indeed, it appears that Davis would not be eligible to have his record sealed under the provisions of R.C. 2953.31 to 2953.35, because he was convicted of a crime that would constitute a felony of the first degree under Ohio law. *See* R.C. 2953.36(A)(8).

{¶ 18} However, Gov.Bar R. I(13)(D)(5)(a)(ii) directs that if an applicant has been convicted under the laws of the United States, we are to consider "whether the applicant would be eligible to have his rights and privileges restored under the laws of Ohio if convicted in this state for the same offense." If Davis had been convicted of the same offenses in Ohio, some of his rights and privileges would have been restored as a matter of law. *See* R.C. 2961.01(A) (providing that a person convicted of a felony is competent to be an elector during and following final discharge from a period of community control, parole, or postrelease control); R.C. 2967.16(C)(1) and (2) (providing that with certain enumerated exceptions not relevant herein, a person "shall be restored to the rights and privileges forfeited by a conviction" upon final release or termination of postrelease control or community control).

{¶ 19} In addition, the board noted that Davis's offenses do not disqualify him by law from holding an office of public trust. *See* Gov.Bar R. I(13)(D)(5)(a)(iii); R.C. 2921.02 (permanently disqualifying public servants, party officials, and others convicted of bribery from holding any public office,

6

employment, or position of trust); R.C. 2921.41(C) (providing the same bar for public officials and party officials convicted of theft in office); R.C. 3775.99(C) (providing the same bar for public servants and public officials convicted of certain offenses related to sports or casino gaming or the regulation thereof). We also note that neither of his offenses is one of those enumerated in R.C. 2967.16(C)(2)(c) that would prevent the privilege of holding a position of honor, trust, or profit from being restored automatically on the completion of his criminal sentence.

{¶ 20} Furthermore, the board found that approval of Davis's application would not adversely affect the public's perception of, or confidence in, the legal profession. *See* Gov.Bar R. I(13)(D)(5)(a)(iv). On the contrary, the board applauded Davis for accepting responsibility for his actions and moving forward with his life in a positive manner.

{¶ 21} In support of its determination that Davis is a suitable candidate to sit for the Ohio bar exam, the board cited several character-reference letters in Davis's National Conference of Bar Examiners report. One of those references, a pastor of, mentor to, and friend of Davis who had known him for more than 30 years stated, "I believe Mr. Davis to be a man of exceptional character: intelligent, focused and with a heart to serve humanity. He will be a tremendous asset to the profession and will serve with honor." Another reference, who had known Davis for approximately 25 years, stated that he admires Davis's "commitment to justice, fairness, compassion, and attention to detail" and that he has admired "[Davis's] resilience in the face of life changes, observed his ability to focus on what is important, and marveled at his tenacity." Moreover, the Cincinnati Bar Association renewed its support for Davis's application at the conclusion of his hearing testimony.

{¶ 22} Upon consideration of the record and the applicable rules, we agree that Davis has carried his burden of proving that he currently possesses the requisite character, fitness, and moral qualifications for admission to the practice of law.

**{¶ 23}** Accordingly, we adopt the board's report, approve Davis's pending application, and permit him to sit for the February 2023 bar exam provided that he complies with all applicable procedures and requirements.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

DETERS, J., not participating.

————————————

Damon Ray Davis, pro se.

Julia Blanche Meister, for the Cincinnati Bar Association.

————————————