[Cite as *Calista Ents., L.L.C. v. Oxford Bd. of Zoning Appeals*, 2025-Ohio-1692.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| CALISTA ENTERPRISES, LLC, | : | |
| Appellant, | : | CASE NO. CA2024-09-116 |
| | : | O P I N I O N AND JUDGMENT ENTRY 5/12/2025 |
| - vs - | : | |
| | : | |
| OXFORD BOARD OF ZONING APPEALS, | : | |
| | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2022 07 1142


Jack F. Grove, for appellant.

Coolidge Wall Co., L.P.A., and Christopher R. Conard and Benjamin A. Mazer, for appellee.


**O P I N I O N**


**M. POWELL, J.**

{¶ 1} Appellant, Calista Entreprises, LLC ("Calista"), appeals the judgment of the

Butler County Court of Common Pleas affirming the decision of the Oxford Board of

Zoning Appeals ("BZA") to deny Calista's request for a variance.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This case concerns a parcel of land located at 314 University Avenue, Oxford, Ohio (the "Property"). A modest single-family dwelling is located on the "bowling alley" type lot; however, Calista intends to build a new three-family dwelling on the Property.

{¶ 3} The record shows that the Property was purchased in 2000 by Ned Hoelzer. At the time, the Property was in a single-family zoning district. In 2017, the Property was rezoned to be in the R3-MS district, which allows for single-family dwellings, two-family dwellings, and three-family dwellings, provided the parcel meets the lot requirements. Calista acquired the Property on an unidentified date in 2017.

{¶ 4} The Oxford Zoning Ordinance requires 60 feet of lot width and 8,000 square feet of lot area for a three-family dwelling in the R3-MS district. In 2022, Calista petitioned the BZA for a lot width variance in order to build a three-family dwelling on the Property. It is undisputed that the Property is 56 feet wide by 182 feet long with an area of 10,192 square feet. Therefore, although the Property exceeds the Zoning Ordinance's area requirement by more than 25 percent, it is four feet short of the lot width requirement for construction of a three-family dwelling.

{¶ 5} Calista's petition came for a hearing before the BZA on June 28, 2022. The BZA heard testimony from four individuals: (1) the City Planner, Zachary Moore, (2) an architect on behalf of Calista, Scott Webb, (3) a zoning professional on behalf of Calista, Greg Dale, and (4) an individual who owns a rental property near the Property. The testimony of Moore, Webb, and Dale mostly centered on the factors the BZA must consider and weigh "in determining whether practical difficulties exist sufficient to warrant a variance." Oxford Zoning Ordinance Section 1139.02(c)(2). Those factors are:

A. Whether the property in question will yield reasonable return or whether there can be any beneficial use of the property without the variance;

B. Whether the variance is substantial;

C. Whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance;

D. Whether the variance would adversely affect the delivery of governmental services (i.e. water, sewer, garbage);

E. Whether the property owner purchased the property with knowledge of the zoning restriction;

F. Whether the property owners' predicament feasibly can be obviated through some method other than a variance;

G. Whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance;

H. Any other relevant factor.

*Id.*

{¶ 6}   After submission of the evidence, the BZA discussed and voted upon each of the Section 1139.02(c)(2) factors. Upon conclusion of the discussion and vote, the BZA chairman summarized:

Criterion A was a 4-0 vote that it does not support the variance. Criterion B, whether it's substantial. It was a 3-1 vote that it is not substantial. Criterion C, essential character of the neighborhood or detriment to adjoining properties, it would not do that by a 4-0. Criterion D, whether the variance would adversely affect the delivery of governmental services, again, a 4-0 vote that it would not. Criterion E, whether the property owner purchased property with knowledge of the zoning, it was 4-0 vote that he did not. And it would support the variance. Criterion F, whether the property owner's predicament feasibly can be obviated through some method other than a variance, I was specific that this was to build a three-unit on this property, and it was 4-0 that it could not be. … Criterion G, whether the spirit and intent of the zoning code would be observed and substantial justice done by granting the variance, it was a 1-3 vote that it would not support the

spirit and intent. Criterion H, we again had repeated comments about the ability to build two-family or a single family without variance.

{¶ 7} Thereafter, a motion to deny the variance was made and passed on a 3-1 vote. By letter of June 29, 2022, the BZA notified Calista of the denial of its variance request. The decision letter did not include any findings or refer to any evidence or testimony supporting the denial of the variance. Rather, the decision letter simply stated that the BZA voted 3-1 to deny the variance, "basing their decision upon the Decision Standards" listed below:

> Criterion A–Whether the property in question will yield reasonable return or whether there can be any beneficial use [of] the property without the variance

> Criterion E–whether the property owner purchased the property with the knowledge of the zoning restrictions

> Criterion G–whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance

> Criterion H–Any other relevant factor

{¶ 8} Calista appealed the BZA's decision to the Butler County Court of Common Pleas pursuant to R.C. Chapter 2506. The parties submitted briefs in support of their respective positions and appeared before the common pleas court for argument on April 7, 2023. On May 15, 2023, after considering the record before it, the common pleas court affirmed the BZA's decision. The common pleas court found that Calista "failed to meet its burden of proof by a preponderance of the evidence that the BZA decision is unreasonable, arbitrary, and capricious." The common pleas court further found that the BZA's decision "denying . . . the area variance was supported by the preponderance of the substantial, reliable, and probative evidence."

{¶ 9} Calista appealed the common pleas court's decision to this court, raising a

single assignment of error: "the trial court erred in affirming the BZA's denial of an area variance which was the product of inconsistent reasoning, arbitrary action, and disparate treatment." On January 8, 2024, we reversed and remanded the common pleas court's decision because it lacked "any explanation or analysis . . . of the evidence in the record and whether Calista established practical difficulties." *Calista Ents. v. Oxford Bd. of Zoning Appeals*, 2024-Ohio-34, ¶ 19 (12th Dist.) ("*Calista I*"). Specifically, we found that because the common pleas court's decision "[did] not identify or analyze the evidence in the record, [did] not discuss any relevant testimony, and [did] not apply any evidence in the record to the 'practical difficulties' factors," we could not determine whether the common pleas court fulfilled its obligation under R.C. 2506.04. *Id.* at ¶ 17, 19.

{¶ 10} On September 19, 2024, the common pleas court once again affirmed the BZA's decision to deny the variance. Upon reviewing the BZA's deliberations, the common pleas court determined that a preponderance of reliable, probative, and substantial evidence supported the BZA's conclusions that (1) under Criterions A and H of the Zoning Ordinance, Calista's use of the Property as a single-family or two-family dwellings, for which no variance would be necessary, were beneficial uses of the Property and would yield a reasonable return, (2) under Criterion E, the Property was purchased in 2000 at a time when it was zoned only for single-family dwellings, and therefore, "the current Property owner had no reason to expect the Property could be used as anything more than a single-family dwelling based upon the investment-backed expectations for the Property before the upzoning," and (3) under Criterion G, the spirit and intent of the lot width requirement was not to allow three-family dwellings on every property but rather, was to require greater lot sizes for three-family dwellings to accommodate the increased density.

{¶ 11} Calista now appeals, raising one assignment of error:

THE COMMON PLEAS COURT ERRED IN AFFIRMING THE OXFORD BZA'S DENIAL OF THE MINOR AREA VARIANCE WHEN IT FAILED TO CONSIDER EVIDENCE ON THE WHOLE RECORD AND TO PERFORM JUDICIAL FUNCTION MAKING LEGAL DETERMINATIONS ACCORDING TO PREVAILING PRINCIPLES OF LAW.

{¶ 12} Calista challenges the common pleas court's decision affirming the BZA's denial of a variance for the Property. Calista raises three issues for review. We review Calista's first and third issues for review together; the second issue for review will be addressed last.

## II. R.C. CHAPTER 2506 ADMINISTRATIVE APPEALS

{¶ 13} Appeals of administrative agency decisions are governed by R.C. Chapter 2506. *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 22; *Shamrock Materials, Inc. v. Butler Cty. Bd. of Zoning Appeals*, 2008-Ohio-2906, ¶ 9 (12th Dist.).

{¶ 14} "A common pleas court reviewing an administrative appeal pursuant to R.C. 2506.04 weighs the evidence in the whole record and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence." *Calista I*, 2024-Ohio-34 at ¶ 10. "R.C. 2506.04 requires the [common pleas] court to examine the substantial, reliable and probative evidence on the whole record, which in turn necessitates both factual and legal determinations." *Dudukovich v. Lorain Metropolitan Housing Authority*, 58 Ohio St.2d 202, 207 (1979). The common pleas court "must appraise all such evidence as to the credibility of the witnesses, the probative character of the evidence and the weight to be given it." *Id.* Although the common pleas court must defer to the administrative agency's resolution of conflicting evidence, the findings of the agency are by no means conclusive. *Kisil v. Sandusky*, 12 Ohio St.3d 30,

35 (1984).

{¶ 15} An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope. *Id.* at 34. The court of appeals reviews the common pleas court's judgment only on questions of law. It does not have the same extensive authority to weigh the evidence. *Calista I* at ¶ 11. "Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion." *Richard J. Conie Co. v. W. Jefferson Village Council*, 2023-Ohio-161, ¶ 16 (12th Dist.); *Kisil* at 34, fn. 1. Thus, a court of appeals must affirm a common pleas court's decision unless the common pleas court abused its discretion in finding that the administrative order was supported by reliable, probative, and substantial evidence. *Boice v. Ottawa Hills*, 2013-Ohio-4769, ¶ 7.

### III. ZONING VARIANCES

{¶ 16} Generally, a variance permits a property owner to use his or her property in a manner that is otherwise prohibited by zoning regulations. *Nunamaker v. Bd. of Zoning Appeals*, 2 Ohio St.3d 115, 118 (1982). Thus, a variance results in a departure from the literal enforcement of a zoning ordinance and may be granted only upon a showing of practical difficulties or unnecessary hardship. *Id.*

{¶ 17} There are two types of variances, area variances and use variances. *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304, 306 (1981). "A use variance permits land uses for purposes other than those permitted in the district as prescribed in the relevant regulation," such as "a commercial use in a residential district." *Id.* "An area variance authorizes deviations from restrictions upon the construction and placement of buildings and other structures such as modification of area, yard, height, floor space, frontage, density, setback, and similar restrictions." *Dsuban v. Union Twp. Bd. of Zoning Appeals*, 140 Ohio App.3d 602, 606 (12th Dist. 2000).

{¶ 18} Calista's petition sought an area variance. An applicant for an area variance

- 7 -

need only show practical difficulties as opposed to the more stringent unnecessary hardship standard applicable to use variances. *Duncan v. Middlefield*, 23 Ohio St.3d 83, 85 (1986). "A property owner encounters 'practical difficulties' whenever an area zoning requirement (*e.g.,* frontage, setback, height) unreasonably deprives him of a permitted use of his property." *Id.* at 86. "The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable." *Id.* If practical difficulties exist which deprive an applicant of a permitted use of his property, the area variance should be granted. *Basista Holdings, L.L.C. v. Ellsworth Twp.*, 2017-Ohio-9375, ¶ 41 (7th Dist.).

{¶ 19} The Ohio Supreme Court has set forth several factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property. The factors include, but are not limited to (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (*e.g.,* water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance. *Duncan* at 86. "[N]o single factor controls in a determination of practical difficulties. A property owner is not denied the opportunity to establish practical difficulties, for example, simply because he purchased the property with knowledge of the zoning restrictions." *Id.* Criterions A through

G of the Zoning Ordinance are identical to the seven *Duncan* factors.[1]

## IV. DISCUSSION

{¶ 20} In its first and second issues for review, Calista argues that the common pleas court erred in upholding the BZA's denial of Calista's variance request because the court did not consider the "whole record" and the spirit and intent of the Zoning Ordinance favors a three-family dwelling in the R3-MS zoning district.

### A. CONSIDERATION OF THE WHOLE RECORD

#### 1. Disparate Treatment under the Zoning Ordinance

{¶ 21} Calista first asserts that it is the victim of "disparate treatment" because the BZA previously granted two nearby properties lot width variances that were greater than the variance requested by Calista, and that the common pleas court ignored the "compelling evidence of disparate treatment" in affirming the BZA's decision.[2] In support of its argument, Calista cites three Ohio Supreme Court decisions (*Kisil*, *Duncan*, and *Boice*) and this court's opinion in *Conrad v. Oxford*, 2017-Ohio-9089 (12th Dist.).

{¶ 22} In *Kisil*, a landowner's variance request to convert a single-family residence into a duplex was denied by the zoning board because the lot on which the residence was located did not satisfy the minimum yard requirements under the zoning code. The common pleas court reversed the zoning board's decision, finding that the denial of the variance was unreasonable and arbitrary in light of a variance granted to a neighboring property owner and the entire character of the neighborhood. The Ohio Supreme Court found no abuse of discretion in the common pleas court's judgment:

---

1. Throughout the opinion, we refer to the "decision standards" of Section 1139.02(c)(2) of the Zoning Ordinance and the *Duncan* factors alternatively as Criterions as used by the BZA in its deliberations and decision letter and factors as used in *Duncan*.

2. The two properties are located at 209 N. Campus Avenue and 112 S. Poplar Street, respectively. In contrast to the Property which had 93 percent of the required lot width, the North Campus property had 80 percent lot width and the Poplar Street had 86 percent lot width.

[T]he common pleas court was correct when it found that the denial of the variance by the . . . board was unreasonable and arbitrary. An examination of the record reveals that the neighborhood in which appellant's parcel of land is situated contains many duplex residences. A significant number of these residences are on lots insufficient in size, according to the zoning ordinances. Even more persuasive is the fact that the lot north of appellant's lot was recently granted a variance for a multifamily residence. The allowance of other duplexes on lots insufficient in size and the granting of a multifamily variance to a neighboring landowner, while denying appellant's request for a variance, is unreasonable and arbitrary enforcement of the zoning ordinances.

*Kisil*, 12 Ohio St.3d at 33.

{¶ 23} In *Duncan*, a landowner sought a variance to build an eight-unit multi-family dwelling behind an existing duplex. At the time of the application, the lot was 12 feet short of the frontage requirement for construction of a multi-family dwelling. The supreme court found that a preponderance of reliable, probative, and substantial evidence supported the denial of the variance because, inter alia,

it cannot easily be determined from the record whether the requested variance was "substantial," especially because the evidence presented did not show that other variances had been granted to allow the construction of multi-family dwellings on lots having less than one hundred feet of frontage. In any event the available evidence does not indicate that the Duncans were treated differently than any other applicant seeking a variance from the frontage requirements for multi-family dwellings.

*Duncan*, 23 Ohio St.3d at 87.

{¶ 24} In *Boice*, a landowner sought a variance to have a vacant 33,000-square-foot residential lot declared a "buildable" lot. At the time, the zoning code included a requirement that no structure could be built on a lot smaller than 35,000 square feet. This new size restriction was enacted after the landowner had purchased the lot. Applying the *Duncan* factors to the case, the supreme court reversed the denial of the variance. The supreme court found that the common pleas court's upholding of the variance denial was

an abuse of discretion because (1) the lot should have been grandfathered as a buildable lot when the new zoning restriction was enacted, (2) the 2,000 square-feet variance was de minimis, and (3) "there was disparate treatment of residents in the village when it came to permitting houses to be built on lots smaller than 35,000 square feet. In fact, the only residents who were denied this opportunity to have a smaller lot deemed buildable were plaintiffs. All other property owners who applied after the . . . change in the ordinance were granted permission." *Boice*, 2013-Ohio-4769 at ¶ 6, 17-19.

{¶ 25} In *Conrad*, we addressed whether a zoning board may properly consider other similar variances or denials in determining whether a variance request should be approved, and stated, "[T]he consideration of similar variances or denials is relevant when making such determinations." *Conrad*, 2017-Ohio-9089 at ¶ 17.

{¶ 26} Thus, disparate treatment is a proper consideration in resolving whether a variance is properly denied. Calista's disparate treatment argument focuses on the size of the variance it requested as compared to the more substantial variances sought and granted for the North Campus and Poplar Street properties. It suggests that if these greater lot-width variances were granted to the two nearby properties, then consistent application of the Zoning Ordinance dictated that Calista be granted the lot-width variance it requested. However, the extent of the variance sought is but one of the *Duncan* factors. Section 1139.02(c)(2) of the Zoning Ordinance requires the BZA to consider and weigh all the *Duncan* factors. Calista's disparate treatment argument does not address any factor other than the size of the variance. Whether the variance sought was substantial and whether other properties were treated differently was not the sole factor the supreme court considered in determining whether a variance application was properly denied in *Kisil*, *Duncan*, and *Boice*. In other words, the rulings in the supreme court's decisions Calista cites were not solely dependent upon disparate treatment with respect to the

extent of the variances. Thus, disparate treatment in the application of a zoning ordinance must be weighed in conjunction with the other factors in reviewing a BZA's decision denying a variance.

{¶ 27} Moreover, the size of the variance sought by Calista was not a basis for denying its application. The BZA did not rely upon the *Duncan* factor of whether the variance was substantial and in fact specifically found that the variance was not substantial. Rather, the BZA denied the variance because (1) the Property could yield a reasonable return and be beneficially used as a one-family dwelling or two-family dwelling without the need of a variance, (2) Calista did not acquire the Property with any investment expectations that it could be used for anything other than a single-family dwelling based upon the zoning regulations in effect at the time of acquisition, and (3) granting the variance would not observe the intent and spirit of the zoning requirement and do substantial justice.

{¶ 28} Calista also challenges the common pleas court's upholding of the BZA's variance denial, arguing that the court did not reconcile its ruling with the comments it made during the April 7, 2023 hearing regarding arbitrary action and illegal, disparate treatment. However, these comments have no bearing on the common pleas court's ultimate resolution of the case. A trial court speaks through its journal entries, not through oral pronouncements made during a hearing. *In re K.F.*, 2021-Ohio-1183, ¶ 74, fn. 2 (12th Dist.); *Schenley v. Kauth*, 160 Ohio St. 109 (1953), paragraph one of the syllabus.

{¶ 29} Because disparate treatment is but a single factor and the extent of the variance was not a basis for its denial, we find that disparate treatment alone does not warrant reversal of the common pleas court's affirmance of the BZA's denial of the variance. Calista's argument to the contrary lacks merit.

### 2. Criterion G–The Spirit and Intent of the Zoning Ordinance

**{¶ 30}** Calista also argues that the BZA improperly interpreted the spirit and intent of the Zoning Ordinance, and that the common pleas court improperly deferred to the BZA's interpretation rather than conducting the appropriate legal analysis.

**{¶ 31}** "[I]n reviewing an application for an area variance, . . . the 'spirit' rather than the 'strict letter' of the zoning ordinance should be observed so that 'substantial justice [is] done.'" *Duncan*, 23 Ohio St.3d at 86. "In observing the spirit of an ordinance and attempting to do substantial justice, a zoning board of appeals *or a reviewing court* necessarily must weigh the competing interests of the property owner and the community." (Emphasis added.) *Id.*

**{¶ 32}** Under Section 1139.01(a) of the Zoning Ordinance, the purpose of a variance is to permit a variation from the strict interpretation of the Zoning Ordinance so that no specific provision prevents development of a specific site that would otherwise not be possible and that would satisfy the general intent of the Zoning Ordinance. Pursuant to Section 1123.01 of the Zoning Ordinance, the general purpose of the ordinance is to (a) encourage and facilitate orderly growth and development, (b) establish population densities in correlation to various public services, (c) conserve property value and encourage the most appropriate use of land, (d) protect from incompatible uses, (e) avoid inappropriate development of land and avoid damage from land development, and (f) further the future implementation of planning objectives while protecting existing uses and structures.

**{¶ 33}** Section 1143.07 of the Zoning Ordinance governs the type of appropriate dwellings within Oxford's Mile-Square District—the district where the Property is located; permitted uses include single-family dwellings, two-family dwellings, and three-family dwellings with lot widths of 40, 50, and 60 feet, respectively. Section 1143.07(b)(1) and (c) of the Zoning Ordinance. The ordinance defines the purpose of the Mile-Square

District as follows: "to preserve and encourage a mix of single-family, two-family, and three-family dwellings in an urban environment while maintaining the urban form of development within the Mile-Square District. Furthermore, it is the intent of this district to be located in areas that are in close proximity to commercial services, public institutions, and adequate infrastructure to serve the residents within this district." Section 1143.07(a) of the Zoning Ordinance.

{¶ 34} The BZA's decision letter listed the "spirit and intent" factor but did not address why the requested variance would not support the "spirit and intent" behind the zoning requirement and why substantial justice would not be done by granting a variance. The BZA's 3-1 vote that the variance would not observe the spirit and intent of the regulation begs the question as the only reason articulated during the discussion of this factor was that the variance would permit a lot width less than that prescribed by the Zoning Ordinance for three-family dwellings. In other words, because the Zoning Ordinance requires a minimum lot width of 60 feet, a variance from that requirement is necessarily contrary to the spirit and intent of the Zoning Ordinance.

{¶ 35} The common pleas court stated the following regarding the spirit and intent factor:

> The BZA concluded Criterion G supported denial of the variance because the general purpose of minimum lot width regulations is to ensure regularity of dimensions and form for specific land uses or districts, resulting in a predictable ratio of building sizes to lot size. . . . After weighing testimony from the witnesses, the BZA concurred with the City Planner that the spirit and intent of the zoning code was not to allow three-family dwellings on every property just for the sake of increasing density.
>
> Calista's architect, Scott Webb, testified that the spirit and intent of the zoning code was to essentially encourage or allow for variance requests. In contrast, the City Planner focused on the spirit and intent behind the minimum lot size requirements in an R3MS district and concluded that the

different size requirements exist for single-family, two-family, and three-family dwellings because a three-family dwelling requires a large enough lot to accommodate the increased density.

**{¶ 36}** Regarding this factor, the common pleas court referenced testimony before the BZA that the zoning "regulation is to ensure regularity of dimensions and form for specific land uses or districts, resulting in a predictable ratio of building sizes to lot size" and that "a three family dwelling requires a large enough lot to accommodate the increased density." Regarding the lot size necessary to accommodate a three-family dwelling, the common pleas court did not consider that the Property exceeds the Zoning Ordinance's area requirement for three-family dwellings by more than 25 percent.

**{¶ 37}** Furthermore, neither the letter nor the spirit and intent of Section 1143.07(c) of the Zoning Ordinance requires regularity of lot width. On the contrary, only minimum lot widths are specified, permitting variations from lot to lot, not only between the different residential uses but also within each of those uses. Considering that lot width variations are permitted within the R3-MS district, a de minimis lot width variance from 60 feet to 56 feet on a lot exceeding the area requirement by more than 25 percent would not adversely affect neighborhood aesthetics and be unnoticeable upon casual observation.

**{¶ 38}** We hold that the common pleas court abused its discretion in finding that the preponderance of the substantial, reliable, and probative evidence supported the BZA's determination that Criterion G favored denying the variance.

**3. Criterion A–Whether the Property in Question Will Yield A Reasonable Return or Whether There Can Be Any Beneficial Use of the Property Without the Variance; and Criterion H–Any Other Relevant Factor**

**{¶ 39}** The BZA concluded that the Property will yield reasonable return and can be beneficially used without a variance with either a single-family dwelling—in its current form or newly built—or a two-family dwelling. Based upon the foregoing, the common

- 15 -

pleas court held that a preponderance of reliable, probative, and substantial evidence supported the BZA's determination that Criterions A and H favored denying the variance. We agree with the common pleas court regarding Criterion A.

{¶ 40} However, the common pleas court erred as a matter of law in upholding the BZA's denial of the variance under Criterion H of the Zoning Ordinance. Under Section 1139.02(c)(2) of the Zoning Ordinance, Criterion H–"any other relevant factor"–is one of the eight factors the BZA must consider and weigh and is listed after Criterions A through G. Thus, by its plain language, Criterion H is necessarily a factor that is not already set forth or encompassed in Criterions A through G; in other words, Criterion H is a new and additional factor. However, by holding that "a preponderance of reliable, probative, and substantive evidence [supported] the BZA's decision that Criterion H favored denial of the variance" for the same reason as that supporting Criterion A, the common pleas court improperly double counted Criterion A, which, in turn, made it seem as if an added factor operated against the variance.

{¶ 41} We hold that the common pleas court abused its discretion in finding that the preponderance of the substantial, reliable, and probative evidence supported the BZA's determination that Criterion H favored denying the variance.

### 4. Criterion E–Whether the Property Owner Purchased the Property With Knowledge of the Zoning Restriction

{¶ 42} The BZA and the common pleas court erred in relying upon Criterion E— whether the property owner purchased the Property with knowledge that the Zoning Ordinance did not permit three-family dwellings in the zoning district in which the Property is situated—as supporting denial of the variance. It is undisputed that the Property was purchased in 2000 by Ned Hoelzer. At the time, the Property was in a single-family zoning district and three-family dwellings were not permitted. In 2017, the Property was rezoned

to allow for single-family dwellings, two-family dwellings, and three-family dwellings, provided the parcel meets the lot requirements. The BZA's appellate brief asserts that Calista acquired the Property from Hoelzer in 2017 but does not indicate whether this occurred before or after the Property was rezoned. No evidence was presented regarding any connection between Hoelzer and Calista. Only one mention was made during the BZA hearing when Webb, the architect, labeled Calista as "the progeny, so to speak, of the Hoelzer Family." Moreover, and despite the BZA's decision letter listing Criterion E as a basis for denying the variance, the BZA's record discloses that the BZA voted 4-0 that Calista did not purchase the Property with knowledge that three-family dwellings were not permitted in the zoning district.

{¶ 43} We hold that the common pleas court abused its discretion in finding that the preponderance of the substantial, reliable, and probative evidence supported the BZA's determination that Criterion E favored denying the variance.

### 5. Criterions B, C, D, and F

{¶ 44} The BZA found that Criterion B (whether the variance was substantial), Criterion C (whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance), Criterion D (whether the variance would adversely affect the delivery of governmental services i.e., water, sewer, garbage), and Criterion F (whether the property owner's predicament feasibly can be obviated through some method other than a variance) all supported approving the variance.

{¶ 45} "R.C. 2506.04 requires the [common pleas] court to examine the substantial, reliable and probative evidence on the whole record, which in turn necessitates both factual and legal determinations." *Dudukovich*, 58 Ohio St. 2d at 207. The common pleas court "must appraise all such evidence as to the credibility of the

witnesses, the probative character of the evidence and the weight to be given it." *Id.* Thus, the common pleas court "must weigh the evidence in the record . . . to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision." *Id.*; *Cleveland Clinic Found.*, 2014-Ohio-4809.

{¶ 46} On remand from *Calista I*, the common pleas court issued a nine-page decision, which included a recitation of the facts and procedure, restating its conclusion that the BZA's decision to deny the variance was supported by a preponderance of substantial, reliable, and probative evidence. The court interpreted our remand mandate "as a directive to issue a judgment entry identifying and analyzing the evidence in the record, discussing relevant testimony, and applying the evidence in the record to the 'practical difficulties' [*Duncan*] factors . . .." However, the common pleas court's decision focuses solely on the four factors relied upon by the BZA to deny the variance, and in reviewing these four factors, simply defers or refers to the BZA's conclusion and its concurrence with the City Planner regarding each factor. Moreover, the common pleas court did not examine, appraise, analyze, or weigh the factors found by the BZA as supporting the variance contrary to the mandate in *Dudukovich* and *Cleveland Clinic*.

{¶ 47} We hold that the common pleas court abused its discretion in failing to consider Criterions B, C, D, and F in determining whether the preponderance of the substantial, reliable, and probative evidence supported the BZA's denial of the variance.

### B. THE ZONING ORDINANCE IS VOID FOR VAGUENESS

{¶ 48} In its second issue for review, Calista challenges the common pleas court's affirmance of the BZA's denial of the variance on the ground that Section 1139.02(c) of the Oxford Zoning Ordinance is unconstitutional. Specifically, Calista contends that Section 1139.02(c), which governs the BZA's administrative review of variance applications, is void for vagueness because it directs the BZA to disregard "the existence

of variances . . . on other land, sites, or structures not presently under consideration," thereby inviting arbitrary and disparate treatment. The BZA argues that Calista has forfeited the issue because it failed to raise it in the common pleas court proceedings prior to the first appeal. In response, Calista asserts it raised the issue during the April 7, 2023 hearing before the common pleas court and during oral arguments before this court in *Calista I*.

{¶ 49} In Ohio, the constitutionality of a zoning ordinance may be attacked in two ways. An appeal from an administrative zoning decision can be taken pursuant to R.C. Chapter 2506. In addition, or in the alternative, a declaratory judgment action pursuant to R.C. Chapter 2721 can be pursued. *Karches v. Cincinnati*, 38 Ohio St.3d 12, 15 (1988). In a R.C. Chapter 2506 appeal, "an aggrieved party may argue that the ordinance, as applied in its particular case, is unconstitutional. This limited constitutional argument is to be considered by the trial court in addition to any other arguments." *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St.3d 452, 453, 1993-Ohio-115. The determination of constitutionality turns on the specific proposed use of the property. *Id.* "In a declaratory judgment action filed pursuant to R.C. Chapter 2721, the landowner sets forth a challenge to the regulation's overall constitutionality." *Id.* "Such action does not raise the denial of the variance as an issue." *Id.* at 454.

{¶ 50} Whether Calista raised the void-for-vagueness issue during the April 7, 2023 hearing before the common pleas court or mentioned it during oral arguments before this court in *Calista I*, it is undisputed that Calista did not assign as error in *Calista I* that Section 1139.02(c) was void for vagueness or that the common pleas court erred in failing to address Calista's constitutional argument in its May 15, 2023 decision. As stated above, Calista raised only this single assignment of error in *Calista I*: "the trial court erred in affirming the BZA's denial of an area variance which was the product of inconsistent

reasoning, arbitrary action, and disparate treatment." Calista's second issue for review is therefore barred by res judicata. *See State v. Tutt*, 2023-Ohio-2819 (12th Dist.); *BP Prods. N. Am., Inc. v. Oakwood*, 2004-Ohio-3119 (8th Dist.).

## V. CONCLUSION

**{¶ 51}** We hold that the common pleas court abused its discretion in finding that the preponderance of the substantial, reliable, and probative evidence supported Criterions E, G, and H as reasons to deny the variance. We further hold that the common pleas court abused its discretion in failing to give any consideration to Criterions B, C, D, and F as supporting the variance. The judgment of the common pleas court is reversed and the matter is remanded to the common pleas court. On remand, the common pleas court shall weigh Criterion A, as supporting denial of the variance, against the various other factors favoring approval of the variance in determining whether the preponderance of the substantial, reliable, and probative evidence supports the BZA's denial of Calista's variance request.

**{¶ 52}** In light of the foregoing, Calista's assignment of error is sustained.

**{¶ 53}** Judgment reversed and remanded for further proceedings.

BYRNE, P.J., and PIPER, J., concur.

# J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and this cause is remanded for further proceedings according to law and consistent with the above Opinion.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge