[Cite as *4WH, L.L.C. v. HWD Holdings, L.L.C.*, 2026-Ohio-2124.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| 4WH, LLC, ET AL., | : | |
| Appellees and Cross-Appellants, | : | CASE NO. CA2024-09-117 |
| | : | AMENDED |
| | : | O P I N I O N AND |
| - vs - | | JUDGMENT ENTRY[1] |
| | : | 6/8/2026 |
| HWD HOLDINGS, LLC, ET AL, | : | |
| Appellants and Cross-Appellees. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2022 04 0631


McDonald Hopkins, LLC, and Matthew J. Cavanagh and Alex S. Bruce, for appellees and cross-appellants.

Keating Muething & Klekamp, PLL, and Steven C. Coffaro, Taylor V. Trout, and Samuel B. Weaver, for appellants and cross-appellees.


# **O P I N I O N**


**BYRNE, J.**

{¶ 1}   Defendant-appellants, HWD Holdings LLC ("Holdings") and Luke Williams

("Luke"), appeal from the summary judgment decision issued by the Butler County Court

---

1. We issue this Amended Opinion and Judgment Entry to reflect a change of counsel for appellees and cross-appellants.

of Common Pleas. Plaintiffs-appellees, 4WH, LLC ("4WH") and Storage Units Hamilton, OH, LLC ("Storage LLC"), along with third-party defendant, Francis Webster ("Francis"), have cross-appealed. As to appellants, we affirm the summary judgment decision. As to cross-appellants, we find that we lack jurisdiction to resolve their appeal.

**I. Brief Background and Parties**

{¶ 2}   This litigation involves numerous parties, claims, counterclaims, cross-claims, appeals, and cross-appeals. In the simplest terms, 4WH sued Holdings, alleging that Holdings or its representatives made fraudulent misrepresentations or concealments concerning a joint development project in which both entities were involved and the condition of a building involved in that project. Holdings counterclaimed against 4WH, arguing that 4WH trespassed and demolished a building on Holdings' property without authorization. These issues were resolved by the trial court in a summary judgment decision that is now on appeal. The following chart describes the parties, their roles in the joint development, and the party identifiers that that will be used in this opinion. Certain information included in the "Background" column will be explained further in the narrative below, but is included in the chart now for the reader's easy reference.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

| Status in Trial Court | Party | Party Identifiers Used In This Opinion | Background | Status on Appeal |
|---|---|---|---|---|
| **Plaintiffs** | Storage Units Hamilton, OH, LLC | "Storage LLC" | Owned by Francis Webster and four other individual investor partners. | **Appellee/ Cross-Appellant** |
| | 4WH, LLC | "4WH" | Initially a joint venture between Storage LLC and Holdings (see below). Holdings later left the joint venture. | **Appellee/ Cross-Appellant** |
| | | | | |
| **Defendants** | HWD Holdings, LLC | "Holdings" | Owned by partners Luke Williams, Matt Williams, John Williams, and Cobblestone | **Appellant/ Cross-Appellee** |
| | Luke Williams | "Luke" | One of the owners of Holdings | **Appellant/ Cross-Appellee** |
| | Cobblestone Capital, LLC | "Cobblestone" | Owned by Zach Williams, son of Luke Williams | **Appellant/ Cross-Appellee** |
| | M&H Williams, LLC | "M&H" | Worked on the storage building's roof and façade. Owned by partners Matt Williams and his wife | **Appellant/ Cross-Appellee** |
| | Level & Line Construction, LLC | "L&L" | Worked on the storage building's façade | **Appellant/ Cross-Appellee** |
| | Kentucky Interior Finishes, LLC | "KIF" | Worked on the storage building's façade | **Appellant/ Cross-Appellee** |
| | | | | |
| **Third-Party/ Counterclaim Defendants** | Francis Webster | "Francis" | Partner in Storage LLC and part-owner of Rapid Building Solutions ("RBS") | **Appellee/ Cross-Appellant** |
| | Eagle Demo & Design Construction Company | "Eagle" | A now-dissolved demolition company hired by 4WH to demolish a building that is the subject of a trespass claim. | *Did not participate* |

## II. Factual and Procedural Background

### A. Events Leading up to the Lawsuit

{¶ 3}  On August 10, 2018, the City of Hamilton sent a letter (the "Authorization Letter") to Zach Williams approving a development plan located at 82 North Brookwood Avenue, Hamilton, Ohio. The Authorization Letter stated that the city planning commission was approving a requested planned development, which included a "specific use approval" for the operation of a "mini-warehouse facility" which was "subject to the following conditions for approval." The letter then listed over 30 numbered "conditions" for approval.

{¶ 4}  In or around September 2018, in conjunction with the Authorization Letter, Holdings acquired the four real estate parcels at issue in this appeal, located at 82 North Brookwood Avenue. The four parcels were identified as Tracts "A," "B," "C," and "D." Together they comprised an approximate 20-acre site, which was a "dilapidated" former shopping center in Hamilton, Ohio.

{¶ 5}  The site included an old K-Mart building. Holdings intended to convert the K-Mart building into storage facilities and develop the remaining land for mixed-uses. The only active tenants at the time of the purchase were a Golden Dragon restaurant and a Dollar Tree store, both located on Tract "B."

{¶ 6}  One of the city's "conditions for approval" of the planned development required the demolition of the building where the Dollar Tree was located within one month of the expiration of the Dollar Tree's lease agreement. This condition also required the demolition to be completed within six months of the lease expiration.

{¶ 7}  Francis Webster ("Francis") was one of the owners of Rapid Building Systems ("RBS"), which specialized in installing storage building systems. Prior to the

events that give rise to this dispute, Francis was familiar with not only Luke, but other members of the Williams family, i.e., Matt Williams, John Williams, and Zach Williams. Francis had worked with the Williamses as a subcontractor, building storage units for Luke and his "affiliate companies" on other projects. Francis had worked with each of the Williams family members individually.

{¶ 8}   In late 2018 or early 2019, Francis and the Williamses had a meeting about the Hamilton development project. As a result of this meeting, Francis, Francis' business partners, and the Williamses agreed to become partners in the planned development. The agreement was that Francis and his partners would lend their financial backing and supply the storage building system for the project. Francis and his partners thereafter formed Storage LLC as the limited liability company that would represent their interest in this partnership.

{¶ 9}   In February 2019, Holdings (owned by the Williamses) and Storage LLC (owned by Francis and his partners) formed 4WH for purposes of establishing the contemplated partnership between Holdings and Storage LLC. Under the agreement, Holdings owned 51% of 4WH and Storage LLC owned 49%. Holdings would also act as the manager of 4WH and would be responsible for general operations including managing construction and obtaining city approvals. Storage LLC would be responsible for interior work on the storage building.

{¶ 10} On or about January 2, 2020, Holdings transferred Tracts A, C, and D to 4WH as part of the development plan. Holdings retained title to Tract B.

{¶ 11} The Dollar Tree's lease was set to expire in September 2021. But Dollar Tree voluntarily vacated the lease at some time before this date, with Holdings' consent.

{¶ 12} At some point, work began on the former K-Mart building to convert it into the planned storage building. This work included improvements to the roof and façade.

Francis, who was based in Florida, visited the development site in Hamilton on multiple occasions. During these visits, he raised concerns with Luke about the condition of the planned storage building's roof and façade. According to Francis, Luke informed him that the roof work was complete, the contractors knew what they were doing, the roof was "perfectly fine," and the roof and building envelope were in "good" and "excellent" condition. Luke also allegedly dissuaded Francis from further questioning the roof and building envelope, telling him words to the effect of "this is not your lane." And in fact, Francis agreed that this particular type of roof was not in his "lane," as the roof installed at the former K-Mart was a rubber roof while RBS were experts in metal roofing.

{¶ 13} Other disputes arose between the parties concerning Holdings' handling of 4WH's finances. As a result, Francis and his partners took steps to end the business relationship with Holdings. Through their attorneys, the parties negotiated a "Membership Interest Assignment Agreement" ("MIAA") dated August 26, 2021. In the MIAA, Holdings transferred its entire membership interest in 4WH to Storage LLC, thus removing the Williams family from the joint venture. As a result, Storage LLC became sole member of 4WH and therefore sole owner of Tracts A, C, and D.

{¶ 14} But Holdings continued to hold title to Tract B, which, at the time of the execution of the MIAA, included the building formerly occupied by Dollar Tree. Even though Dollar Tree vacated this building at the time of relevant events, we will refer to this building as the "Dollar Tree Building."

{¶ 15} After the execution of the MIAA, Francis alleged that he discovered that the roof and façade work on the storage building was defective in many respects. He later learned that the majority of this work had been performed by M&H, the company owned by Matt Williams.

{¶ 16} Also after the execution of the MIAA, Francis learned that the City of Hamilton required that all structures on Tract B, including the Dollar Tree Building, must be demolished in order for the planned development to move forward. In other words, a building on land owned by Holdings, which was no longer involved with the development project, was required to be demolished for 4WH's (and thus Storage LLC's) development project to proceed on land owned by 4WH (and thus ultimately by Storage LLC). A dispute arose between the parties about who should pay the costs to demolish the Dollar Tree Building on Holdings' land.

{¶ 17} In an email conversation between Holdings' attorney and Storage LLC's attorney, Holdings' attorney stated that the Williamses' position was that the demolition on Tract B was known by all parties to be a condition to a certificate of occupancy and that consideration for those demolition costs had already been paid by his client in the form of transferring Holdings' interest in Tracts C and D to 4WH.

{¶ 18} Storage LLC's attorney responded that Francis had contacted the city, and the city had refused to release the obligation to demolish the structures on Tract B as a condition for approval of the storage facility. Storage LLC's attorney proposed that the parties split the cost of demolition. Holdings' attorney refused and pointed to a portion of the MIAA that disclosed that 4WH owed $50,000 to Eagle for "demo." Eagle was a demolition company that had previously been hired by 4WH to demolish the Dollar Tree Building. However, this line item in the MIAA did not specify what specific "demo" this line item referred to.

{¶ 19} Francis apparently relented on this dispute and agreed that 4WH was obligated under the MIAA to pay for the costs of demolition of the Dollar Tree Building. Between December 2021 and March 2022, Eagle demolished the Dollar Tree Building at the direction of an individual authorized by Francis.

### B. Filing of the Lawsuit

{¶ 20} In an amended complaint filed June 2023, 4WH and Storage LLC asserted claims of fraud against Holdings and Luke. 4WH and Storage LLC asserted that Holdings and Luke had fraudulently misrepresented the condition of the storage facility prior to their entering into the MIAA. 4WH and Storage LLC further alleged that Holdings and Luke had fraudulently concealed that Holdings, while acting as manager of 4WH, had subcontracted work to businesses owned by the Williams family.

{¶ 21} 4WH and Storage LLC also brought claims of breach of contract, breach of implied warranty, and negligence against Cobblestone, M&H Williams, LLC ("M&H"), Kerkan Roofing, Inc. (dismissed from this action prior to the appeal), Level & Line Construction, LLC ("L&L"), and Kentucky Interior Finishes, LLC ("KIF"). These claims were largely based on allegations that the Cobblestone, M&H, L&L, and KIF had breached their agreement with 4WH by failing to render services as agreed, including failing to deliver a "functional roof and building envelope."

{¶ 22} In its answer and counterclaim, Holdings asserted trespass claims against 4WH and Storage LLC. Holdings asserted the same claims against Francis, individually, and Eagle, naming them as counterclaim defendants under Civ.R. 13(H) and 20(A). Holdings claimed that Francis and Eagle were jointly or severally liable for the same claims arising from the same transaction. The trespass claims against 4WH, Storage LLC, Francis, and Eagle all related to the demolition of the Dollar Tree Building. Holdings asserted that the destruction of the Dollar Tree Building was an unauthorized, intentional intrusion onto Holdings' property and that 4WH, Storage LLC, Francis, and Eagle were liable for the destruction of the Dollar Tree Building.

{¶ 23} Holdings also asserted negligence claims against 4WH, Storage LLC, and Francis (but not Eagle). The negligence claims were derivative of the trespass claims and

asserted that these parties breached a duty of care owed to Holdings and negligently caused the destruction of Holdings' Dollar Tree Building.

{¶ 24} The parties engaged in extensive discovery, including the taking of numerous depositions.

{¶ 25} In April 2024, Holdings, Luke, Cobblestone, M&H, L&L, and KIF together moved for summary judgment on all claims asserted against them by 4WH and Storage LLC. Holdings also moved the court for partial summary judgment, as to liability only, on its counterclaims for trespass and/or negligence against 4WH, Storage LLC, Francis, and Eagle.

{¶ 26} 4WH, Storage LLC, and Francis separately moved for summary judgment in their favor on the trespass and negligence claims filed by Holdings.

### C. The Trial Court's Decision

#### 1. 4WH and Storage LLC's Fraud Claims against Holdings and Luke

{¶ 27} The trial court noted that 4WH and Storage LLC's claims for fraud against Holdings and Luke all related to alleged misrepresentations or concealments that were made for the alleged purposes of inducing Storage LLC to enter into the MIAA.

{¶ 28} First, with respect to the claim that Holdings and Luke made fraudulent misrepresentations as to the condition of the roof/building envelope, the court found that a genuine issue of fact existed as to whether the relationship between Holdings and Storage LLC was in the nature of a fiduciary relationship and whether this relationship required "full disclosure of the roof/building envelope condition" to Storage LLC in conjunction with the execution of the MIAA. The court also found that the condition of the building was a relevant consideration with respect to the MIAA document because the document itself referenced the anticipated costs to complete the storage facility.

{¶ 29} The court also found that Luke's alleged statements to Francis about the "perfectly fine" and "good" or "excellent" condition of the roof was a statement of current condition and was not an opinion statement. Thus, if Luke in fact knew that the roof was not in "good" condition, this statement could constitute a false statement of fact.

{¶ 30} As to whether Francis could rely on Luke's statement, the court noted that the parties had not sufficiently briefed the issue and it was also not clear whether the roof was completed at the time that Luke made the statement about the condition of the roof (which the court noted would make it less reasonable for Francis to rely on Luke's statement.)

{¶ 31} Regardless of any issues with reliance, the court found questions of material fact on the fraudulent misrepresentation aspect of 4WH and Storage LLC's fraud claim and therefore denied summary judgment to Holdings and Luke with respect to that aspect of the fraud claim.

{¶ 32} Second, the court turned to 4WH and Storage LLC's claim that Holdings and Luke fraudulently failed to disclose—or concealed—the familial relationship between Luke and Cobblestone, M&H, L&L, and KIF. The court first noted that in defending this claim from summary judgment and meeting their reciprocal burden, 4WH and Storage LLC had failed to identify any duty on Holdings and Luke's behalf to disclose the Williamses' familial connections with the subcontractors Holdings chose to employ. The court also noted that 4WH and Storage LLC had failed to point to any evidence of damages in conjunction with this claim. The court stated that it was not clear how the negotiation of the MIAA would have differed had 4WH and Storage LLC been aware of the subcontractors' connections to the Williams family prior to entering into the MIAA. Accordingly, the court granted summary judgment in favor of Holdings and Luke on the concealment portion of the fraud claim.

**2. Holdings' Trespass Claim Against 4WH, Storage LLC, and Francis**

{¶ 33} The trial court concluded that Holdings' trespass claim failed as a matter of law because 4WH, Storage LLC, and Francis were authorized to demolish the Dollar Tree Building on Holdings' Tract B. The court first pointed to the language of the MIAA. The court found it "clear" from the agreement's language that the parties anticipated 4WH, Storage LLC, and Francis completing the storage unit project as originally envisioned by the parties. Specifically, it found that Holdings had given 4WH its interest in Tracts C and D "to serve as the initial source of recourse for . . . the cost to complete the improvements . . . ." (quoting from the MIAA). The court noted that the MIAA also referred to "past due" and "current" bills related to the project.

{¶ 34} The court also noted that the city's Authorization Letter required demolition of the Dollar Tree Building as a requirement for completing the storage unit project. The court found that after executing the MIAA, Holdings knew, or should have known, that 4WH would demolish the Dollar Tree Building as part of completing the project and that by executing the MIAA, Holdings consented to the demolition.

{¶ 35} The court rejected two arguments set forth by Holdings concerning the Authorization Letter. First, the court rejected Holdings' arguments that Francis could not have relied on the Authorization Letter for authority to demolish the building because Francis admitted he had not seen that letter until *after* the building was demolished. The court found this insignificant because Francis testified in his deposition that he was aware of the condition based on discussions over financial disputes between the parties concerning who would pay for the demolition.

{¶ 36} Second, the court rejected Holdings' argument that 4WH, Storage LLC, and Francis could not rely on the Authorization Letter for authority to demolish the building because the letter allegedly expired in August 2020. The court noted that August 2020

was one year prior to the effective date of the MIAA (signed August 26, 2021) and the Authorization Letter itself stated no expiration date. The court found that Holdings had not pointed to any evidence that any expiration date was communicated to 4WH, Storage LLC, or Francis and that the testimony of two City of Hamilton employees indicated that the Authorization letter was still active and demolition of the Dollar Tree Building was required in order to obtain a certificate of occupancy.

{¶ 37} The court also noted the correspondence between Holdings' attorney and Storage LLC's attorney concerning the cost of demolition and who would pay for those costs. This correspondence indicated that Holdings' position was (at that time) that all parties knew that demolition of Tract B was a condition to issuing an occupancy permit, that demolition costs had been anticipated, and that Holdings in effect provided for those costs by transferring Tracts C and D to 4WH.

{¶ 38} The court found the statements by Holdings' attorney "significant" and "decisive."  The court noted that this was the only evidence in the record that directly involved Storage LLC in which demolition of Tract B was discussed.

{¶ 39} Ultimately, the court found that while the parties may have disputed certain facts, no *material* facts existed which supported the conclusion that 4WH, Storage LLC, and Francis should not have gone forward with the planned demolition of the Dollar Tree building. The court stated,

> Reasonable minds examining all the evidence can only reach one conclusion, i.e., to wit: the original plan called for demolition of the Dollar Tree building; the MIAA contemplated [4WH, Storage LLC, and Francis] going forward with that plan; and no one ever communicated to [4WH, Storage LLC, and Francis] that they should not go forward with that plan, or that any additional permission would be required.

{¶ 40} The court found that there was no evidence of an intentional trespass and that the only evidence presented was that 4WH, Storage LLC, and Francis simply

undertook to do what was required of them in the Authorization Letter and "delegated" to them under the terms of the MIAA. Accordingly, the court awarded summary judgment to 4WH, Storage LLC, and Francis on Holdings' claim for trespass.

{¶ 41} As to Holdings' negligence claim against 4WH, Storage LLC, and Francis, the court found that Holdings had not responded to 4WH, Storage LLC, and Francis' argument that Holdings had failed to identify any duty not to demolish the Dollar Tree Building. The court agreed that Holdings had not met its reciprocal burden to identify a duty and that summary judgment in favor of 4WH, Storage LLC, and Francis, on the negligence claim was appropriate as well.

{¶ 42} Holdings and Luke appealed, raising one assignment of error.[2] 4WH, Storage LLC, and Francis cross-appealed, also raising one assignment of error.[3]

### III. Law and Analysis

### A. Holdings' Arguments on Appeal

{¶ 43} Holdings' assignment of error states:

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT ON COUNTERCLAIM-PLAINTIFFS' TRESPASS AND NEGLIGENCE CLAIMS.

{¶ 44} Holdings argues that the trial court erred by granting summary judgment in favor of 4WH, Storage LLC, Francis, and Eagle on Holdings' trespass claims and in favor of 4WH, Storage LLC, and Francis on Holdings' negligence claims, for two reasons. First, Holdings argues that the trial court erred by granting summary in Eagle's favor because Eagle never moved for summary judgment. Second, Holdings argues that the trial court

---

2 Cobblestone, M&H, L&L, and KIF have joined Holdings and Luke in this appeal, however, none of the assigned errors relate to claims asserted against these parties.

3 The trial court certified that its summary judgment decision was a final appealable order pursuant to Civ.R. 54(B), despite certain claims remaining pending for trial before the trial court. We do not take issue with the trial court's Civ.R. 54(B) determination, except to the extent noted in Section III(B) below.

erred in finding that 4WH, Storage LLC, and Francis did not trespass and were not negligent on the basis that they were authorized to demolish the former Dollar Tree building based on the Authorization Letter and the MIAA.

**1. Summary Judgment Standard**

{¶ 45} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C. v. Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.).

{¶ 46} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.). "'An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party.'" *Baker v. Bunker Hill Haven Home*, 2024-Ohio-875, ¶ 10 (12th Dist.), quoting *Abbuhl v. Orange Village*, 2003-Ohio-4662, ¶ 14 (8th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.).

{¶ 47} "The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact." *Berkheimer v. REKM, L.L.C.*, 2023-Ohio-116, ¶ 18 (12th Dist.). To satisfy this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Adkins v. Middletown*, 2025-Ohio-317, ¶ 60 (12th Dist.). "Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine

issue of material fact yet remaining for the trier of fact to resolve." *Sullivan v. Mercy Health*, 2022-Ohio-4445, ¶ 21 (12th Dist.). The nonmoving party does this by presenting "'specific facts,'" demonstrating the existence of a genuine triable issue; the nonmoving party "'may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.), citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.), citing *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., L.L.C. v. Young*, 2019-Ohio-3953, ¶ 14 (12th Dist.), citing *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.).

**{¶ 48}** "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, L.L.C. v. McKay*, 2021-Ohio-2156, ¶ 26 (12th Dist.). De novo means that this court uses the same standard that the trial court should have used. *Brock v. Servpro*, 2022-Ohio-158, ¶ 29 (12th Dist.). Therefore, when conducting a de novo review, this court independently reviews the trial court's decision without giving it any deference. *Baker* at ¶ 9.

### 2. Summary Judgment in Favor of Eagle on Holdings' Trespass Claim

### a. Background

**{¶ 49}** Holdings asserts that the trial court "exceeded its authority" by granting summary judgment to Eagle on its trespass claim against Eagle. Holdings points out that Eagle did not participate in the summary judgment proceedings and did not oppose Holdings' motion for summary judgment.

**{¶ 50}** As set forth previously, Holdings asserted claims of trespass against 4WH, Storage LLC, Francis, and Eagle. In September 2023, Eagle filed an answer generally

denying Holdings' trespass claims. Eagle's owner, Jason Shultes, was deposed in the case.

{¶ 51} Eagle did not move for summary judgment on any claims and did not otherwise participate in briefing any of the summary judgment motions. But on June 28, 2024 (about two months after the other parties filed their motions for summary judgment), Eagle's counsel filed a notice indicating that Eagle had been formally dissolved through a filing with the Ohio Secretary of State. In August 2024, Eagle's counsel moved to withdraw as counsel, citing the dissolution of the company. The trial court granted the motion to withdraw.

{¶ 52} In Holdings' motion for summary judgment, Holdings moved for partial summary judgment, as to liability only, on its counterclaims for trespass and negligence against 4WH, Storage LLC, and Francis and trespass as to Eagle.

{¶ 53} 4WH, Storage LLC, and Francis separately moved for summary judgment in their favor on Holdings' trespass and negligence claims. In that motion, 4WH, Storage LLC, and Francis did not expressly argue that Eagle was also entitled to summary judgment, but argued that Holdings' trespass and negligence claims should be denied because 4WH, Storage LLC, and Francis were "clearly authorized" to demolish the Dollar Tree Building.

{¶ 54} The trial court's decision granted "Plaintiffs' motion for summary judgment on [Holdings'] counterclaim/third-party claims for trespass and negligence in its entirety, and in Plaintiffs' favor." The trial court, on Page 1 of its decision, defined "Plaintiffs" as 4WH, Storage LLC, and Francis. The trial court did not state that it was granting summary judgment in favor of Eagle on the same trespass claim. The trial court also noted, in a footnote, that Eagle had not moved for summary judgment or participated in briefing the summary judgment motions filed by the other parties.

**b. Analysis**

{¶ 55} A court speaks through its journal. *See Calista Enterprises, L.L.C. v. Oxford Bd. of Zoning Appeals*, 2025-Ohio-1692, ¶ 28 (12th Dist.). With no express finding in Eagle's favor or against, Eagle remains a party in the proceedings below and Holdings' claims against it for trespass were not resolved in the summary judgment decision. This is bolstered by the fact that the court granted summary judgment only to "Plaintiffs," which the court had previously defined to only to refer to 4WH, Storage LLC, and Francis and not to include Eagle. Moreover, the Ohio Supreme Court has held that "a party who has not moved for summary judgment is not entitled to such an order, even where co-defendants have filed for and obtained this relief." *Marshall v. Aaron*, 15 Ohio St.3d 48, 50 (1984).

{¶ 56} Holdings contends that the trial court impliedly granted summary judgment in favor of Eagle because the court, at the conclusion of its summary judgment decision, listed the claims which were to proceed to a jury trial, which did not include Holdings' claim against Eagle. However, Eagle had not moved for summary judgment and the court noted this fact in the decision. That the court did not specifically discuss Eagle's claims in the context of this decision does not indicate that the court granted summary judgment in Eagle's favor. The decision was limited to the issues presented to the court, and the issue of Eagle's liability for trespass had not been presented. Therefore, we find that Eagle has not been dismissed from the case and that the trespass claim against Eagle remains pending on remand.

### 3. Summary Judgment in Favor of 4WH, Storage LLC, and Francis

### a. Holdings' Trespass Claims Against 4WH, Storage LLC, and Francis

### i. Applicable Law

{¶ 57} "'A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue.'" *Apel v. Katz*, 83 Ohio St.3d 11, 19, 1998-Ohio-420, quoting *Linley v. DeMoss*, 83 Ohio App.3d 594, 598 (10th Dist.1992). *See also Chance v. BP Chemicals, Inc.*, 77 Ohio St.3d 17, 24, 1996-Ohio-352 ("Trespass is an unlawful entry upon the property of another"). Generally, to bring a trespass claim, "a property owner must prove two essential elements: (1) an unauthorized intentional act, and (2) an intrusion that interferes with the owner's right of exclusive possession of [his or] her property." *Estes v. Robbins Lumber, L.L.C.*, 2016-Ohio-8231, ¶ 16 (12th Dist.). A landowner who has shown a tangible invasion of property is entitled to at least recover nominal damages. *Williams v. Oeder*, 103 Ohio App.3d 333, 339 (12th Dist.); *Olive Oil, L.L.C. v. Cleveland Elec. Illum. Co.*, 2021-Ohio-2309, ¶ 13 (8th Dist.). Actual damages may be recovered if the plaintiff proves the trespass proximately caused the damages for which compensation is sought and the amount of those damages. *Meranda Nixon Estate Wine, L.L.C. v. Cherry Fork Farm Supply Co.*, 2024-Ohio-1523, ¶ 95 (12th Dist.).

### ii. Holdings' Arguments Regarding the Authorization Letter

{¶ 58} Holdings argues that 4WH, Storage LLC, and Francis were not, as found by the trial court, authorized to demolish the Dollar Tree Building. Holdings states that the trial court premised its decision on the Authorization Letter and the MIAA. But Holdings argues that neither document provided 4WH, Storage LLC, and Francis with authorization to demolish the building.

{¶ 59} Holdings argues that the City of Hamilton issued the Authorization Letter in conjunction with a plan to develop tracts A through D into a mixed-use, self-storage and residential property development. Holdings argues that when the relationship between it and Storage LLC soured, the parties entered into the MIAA and this 4-tract development project "evaporated." Holdings argues that once the joint plan "evaporated," the "governmental approvals for it became moot."

{¶ 60} To support its claim that demolition of the Dollar Tree Building was only envisioned under the parties' earlier joint plan, Holdings points to deposition testimony of Liz Hayden, Hamilton's Planning Director, and Ken Rivera, the Building Department Director. Holdings argues that Hayden testified that the Dollar Tree Building demolition "was a requirement of the original development" and that there was nothing "structurally unsound" about the Dollar Tree Building that would have required its demolition. Holdings argues that Rivera testified "similarly."

{¶ 61} In her deposition, Hayden was asked why the demolition of the Dollar Tree Building was a requirement in the Authorization Letter. She explained that the proposal was for a "re-envisioning" of the entire site and having "two kind of retail -- small retail structures in the middle of it would hinder the ability to redevelop that site." Hayden also testified that if, hypothetically, the Williamses had come to the planning commission around the time of the execution of the MIAA, in August 2021, and said that they were planning to develop a Trader Joe's at the Dollar Tree Building location, there was no reason that they could not have made that request, so long as they went through the planning commission process. And in the portion of Ken Rivera's testimony cited in Holdings' brief, Rivera agreed that the Dollar Tree Building had not been "condemned."

{¶ 62} Holdings also argues that the Authorization Letter was expired at the time of the demolition of the Dollar Tree Building. While admitting that the Authorization Letter

contained no language stating when it would expire, Holdings points to testimony by Hayden that the city's planned development regulations provide that a city-issued authorization letter expires two years after issuance if the development has not been "platted." Holdings contends that the development had not been "platted" and that based on the August 10, 2018 date of the Authorization Letter, it expired on August 10, 2020, before the Dollar Tree Building was demolished.

{¶ 63} Holdings also argues that the Authorization Letter did not condition the issuance of a certificate of occupancy on demolishing the Dollar Tree Building. Holdings asserts that the only preconditions for the issuance of a certificate of occupancy were that 4WH (1) demolish an old bank on the property, (2) demolish all unoccupied structures then existing *except for the Golden Dragon and Dollar Tree*, (3) update the façade and architecture of the Golden Dragon and Dollar Tree to match the self-storage building, (4) remove and prepare for future development "concrete and off-street parking areas," (5) resurface all vehicular access points, and (6) complete the multi-tenant sign.

{¶ 64} Holdings then argues, apparently in the alternative, that if the demolition was required by the Authorization Letter, nothing prevented 4WH, Storage LLC, and Francis from going back to the City of Hamilton and asking it to revise the Authorization Letter to remove the requirement of demolishing the Dollar Tree Building.

{¶ 65} Holdings next addresses the evidence submitted in the summary judgment proceedings concerning conversations in 2021 between Holdings' attorney and Storage LLC's attorney about who would be responsible for paying for the demolition of the buildings on Tract B. Holdings argues that 4WH, Storage LLC, and Francis are interpreting that conversations to mean that Harris authorized them to demolish the Dollar Tree Building. Holdings claims that this characterization is false and that the conversation did not relate to the Dollar Tree Building specifically, but rather who would pay for any

remaining demolition required under the Authorization Letter. Holdings contends that there was no explicit grant of authority in these email communications by which 4WH, Storage LLC, and Francis would understand that Holdings was authorizing them to demolish the Dollar Tree Building.

{¶ 66} The emails between Holdings' attorney, Nathan Harris, and Storage LLC's attorney, Scott Price, are summarized below.

{¶ 67} On September 8, 2021, Harris (representing the Williamses/Holdings) asked Price (representing Francis/Storage LLC),

> More importantly, what's the ultimate end-game here? My client's position is that this demolition on tract B was clearly known by all parties involved to be a condition to CO [certificate of occupancy], and the demolition has always been reflected as one of the costs to complete the project for which over half a million dollars of additional property was transferred in the form of tracts C and D.

{¶ 68} Price responds,

> To my knowledge, the refusal was mentioned when Richie[4] was talking to the bank this week about the construction status and informing them that the City was refusing [to] separate the completion of the tract B work from issuance of the CO for the self storage facility.
>
> I don't know how to resolve this as everyone is firm in their position. Splitting the costs is always a reasonable first offer but that is not being considered by anyone at this point.

{¶ 69} Harris responds,

> Understood. In this instance, splitting the costs would involve a reversion back of a portion of the parcels that were transferred to 4WH to, in part, cover this exact cost. As it stands today, Richie's group [4WH and Storage LLC] would have received millions of dollars in value in the form of 4WH interest + tracts C and D, without the corresponding benefit of the bargain (the release of tract B mortgage and guaranties) being provided to my client's group, for which we were provided assurances would and did occur. Thus, my client to

---

4 We understand "Richie" to be a reference to Francis.

date has received <u>nothing</u> of value in Ohio in exchange for the deemed transfer of ownership interests in 4WH to Richie's group.

{¶ 70} Harris then continues to ask Price to confirm that Francis' position is that,

[Francis] was unaware that additional demolition needed to occur to complete the project, and that the costs reflected below in Exhibit A to the membership purchase agreement do not relate to such demolition.

{¶ 71} Below this comment, the following image appears

| 2 | Rapid Building Solutions | $137,146.05 | | $69,155.25 |
|---|---|---|---|---|
| 3 | Eagle demo | | | $50,000.00 |
| 4 | Craynon Fire Protection | $24,410.05 | | |
| 5 | Southern Ohio Paving | $0.00 | | $40,000.00 |
| 6 | Hamilton Fence | $30,875.00 | | |

### iii. Analysis

{¶ 72} Holdings argues that the Authorization Letter did not support the trial court's conclusion that 4WH, Storage LLC, and Francis were authorized to demolish the Dollar Tree Building because demolition of the building was not a condition precedent in the Authorization Letter. However, the plain language of the Authorization Letter *did* condition approval of the planned development on 4WH having started demolition on the Dollar Tree Building within one month after the expiration of the Dollar Tree lease and completing that demolition within six months. The Authorization begins:

This letter is to advise you on August 6, 2018, the Hamilton City Planning Commission reviewed your request for an amendment to a final development plan and specific use approval to allow the operation of a mini-warehouse facility.

The Planning Commission approved the amendment to the planned development and specific use approval for the mini-warehouse facility subject to the following conditions for approval:

{¶ 73} The Authorization Letter went on to list 30 plus conditions for approval, including Paragraph 14, which stated:

> The tenant space associated with the Dollar Tree shall be demolished within one (1) month of the expiration of the current lease agreement. Demolition shall [sic] of the tenant space shall be completed within six (6) months of the expiration of the current lease agreement.

{¶ 74} Holdings' argument here seems to be based on the argument that demolition of the Dollar Tree Building was not a requirement for a *certificate of occupancy*. However, in reading the document as a whole, the conditions that related to issuing a certificate of occupancy concerned Phase I of the project, not the entire development.

{¶ 75} The conditions that relate to the issuance of the certificate of occupancy are discussed in the Authorization Letter in paragraphs 10 through 13. These conditions involved demolition of certain buildings, as well as improvements to existing buildings, including improvements to the façade of the Dollar Tree Building. But these were only conditions for approval for a certificate of occupancy during Phase I. Demolition of the Dollar Tree Building remained an overall requirement for approval of the planned development, including the specific use approval for a "mini-warehouse facility."

{¶ 76} Holdings claims that demolition of the Dollar Tree Building was not a condition for approval because other parts of the agreement called for 4WH to improve the Dollar Tree Building's façade and make it consistent with the other designs for the development. But these are not inconsistent provisions. The city could require 4WH to make improvements to the Dollar Tree Building while the business continued to operate under the lease (during Phase I of the project), but also require that 4WH demolish the Dollar Tree Building after the lease had expired. This comports with Hayden's explanation for why the city wanted the building demolished, i.e., two standalone retail units would be

inconsistent with the overall attempt to redevelop the site. Holdings points to no language in the Authorization Letter that supports its claim that demolition of the Dollar Tree Building was not a condition for approval of the planned development.

{¶ 77} Holdings' arguments concerning the demolition of the Dollar Tree Building not being a condition for issuance of a "certificate of occupancy" are a red herring. The plain language of the Authorization Letter required the demolition of the Dollar Tree Building at the expiration of the lease as a condition for approval of the planned development.

{¶ 78} Holdings next argues that Francis admitted that he did not see the Authorization Letter until after the demolition occurred, and thus he could not have relied on that letter as a basis for his belief that 4WH was authorized to demolish the building. However, Francis testified that he was aware of the demolition condition through other means. Specifically, he testified that he learned of this condition when a bank that had liens on the property would not release those liens because that condition had not been satisfied. The fact that Francis did not review the physical Authorization Letter until after demolition would not mean he was unaware of the demolition requirement.

{¶ 79} Holdings' claim that the Authorization Letter had expired based on the city's regulations does not undercut Holdings' authorization to demolish the building. The Authorization Letter itself said nothing about an expiration date. While it may have technically expired under the city's regulatory scheme, there is no evidence that the City of Hamilton ever treated the Authorization Letter as expired or considered any enforcement action based on the demolition of the Dollar Tree Building. The summary judgment evidence presented through the testimony of the city's Building Director, Rivera, the city's Planning Director, Hayden, Zach Williams, and John Williams established that the City never amended or revoked the condition that every structure on Tract B (including

the Dollar Tree Building) must be demolished as a condition for city approval. The summary judgment evidence also demonstrated that the city issued permits to Eagle Demo allowing for the demolition and never revoked those permits.

{¶ 80} The Harris/Price email exchange is really the most instructive view into the parties' understanding shortly after the execution of the MIAA. This conversation began because Francis learned that the city required demolition of the Tract B buildings in order to complete the development project and he (as he admitted in his deposition) did not want to pay for the demolition of the Tract B buildings, including the Dollar Tree Building.

{¶ 81} Harris clearly set forth that Holdings did not expect to have to pay for those costs after the execution of the MIAA and believed that the value it gave to 4WH in the MIAA transaction (Tracts C and D) was intended to pay for the demolition costs "as one of the costs to *complete the project*." (Emphasis added.) Harris further added that because these "costs to complete the project" had not been paid by 4WH, his client to date had not received their end of the bargain, which was "the release of tract B mortgage and guaranties."

{¶ 82} Thus, through Harris, Holdings communicated that it had paid 4WH through the transfers of Tract C and D, that these transfers were intended to help 4WH "complete the project," including demolition of the buildings on Tract B, and that the benefit to Holdings in this transaction was that the lien on the property would be released. Holdings has pointed to no summary judgment evidence indicating any retraction of this position prior to the demolition. Based on the Price/Harris exchange, and based on the totality of circumstances, reasonable minds could only conclude that 4WH, Storage LLC, and Francis would understand that they had Holdings' approval to demolish the Tract B buildings (at their cost).

{¶ 83} Holdings also claims that the demolition of the Dollar Tree Building was "moot" once the joint deal "evaporated." For the proposition that the joint development plans became "moot," Holdings cites paragraph six of the affidavit of attorney Harris, which was submitted with summary judgment filings. In his affidavit, Harris summarizes his understandings of certain discussions between the parties' counsel occurring after the execution of the MIAA. Paragraph six of the Harris Affidavit states:

> I understood that as part of the original development plan approved by the City of Hamilton in 2018, the Dollar Tree building was to be razed, because Luke and Richie were originally developing the entire site together. That cooperative effort ended when the membership transfers were completed in September 2021.

{¶ 84} Paragraph six of the Harris Affidavit does not really state anything of importance. Whether the project became "moot" would not depend on Harris' understanding, but rather the circumstances known to the parties at the time and any agreements set forth in the MIAA. Those circumstances, as discussed above, support 4WH, Storage LLC, and Francis' position that they were authorized to demolish the Dollar Tree Building following the execution of the MIAA.

{¶ 85} The MIAA does not, in any terms, indicate that the development project would be moot. Instead, and as found by the trial court, it supports 4WH, Storage LLC, and Francis' position that the parties anticipated that 4WH, Storage LLC, and Francis would move forward with the project in Holdings' absence. This is apparent in two respects. First, Holdings gave assurances in the MIAA document about past due and current bills owed or owing to various vendors who worked on the project. This strongly implies that the parties expected the project to move forward, just without Holdings' involvement. Second, the parties agreed that Holdings' transfer of tracts C and D, and the value of those tracts, was intended to serve as the "initial source of recourse" for these

existing obligations as well as the "*cost to complete the improvements*." Again, this language strongly supports the contention that both sides to the MIAA understood that the project was moving forward, including any demolition on Tract B that was necessary for the development plans.

{¶ 86} When the parties negotiated the MIAA, Holdings knew that demolition of the Tract B buildings was required under the development agreement with the city. If it did not expect that demolition to occur, then Harris would not have stated in his email exchange that Holdings expected 4WH to pay for the demolition costs. If Holdings anticipated that demolition would not occur because the joint deal had "evaporated" it could and should have included a provision explicitly stating this in the MIAA. But part of the benefit to 4WH, Storage LLC, and Francis in the MIAA is that they would be proceeding alone on the project that Storage LLC and Holdings entered into in the first place. Holdings made no attempts in the MIAA to prevent 4WH, Storage LLC, and Francis from continuing on that project, including by providing that Holdings would request the city modify any conditions for approval imposed by the city. In fact, Holdings gave valuable consideration to 4WH for the specific purpose of 4WH using that consideration in order to "complete the improvements" in the original joint venture.

{¶ 87} In sum, there is summary judgment evidence to support the trial court's conclusion that 4WH, Storage LLC, and Francis had Holdings' authorization to go onto Tract B and demolish the Dollar Tree Building. There is no summary judgment evidence reasonably supporting the contrary view. If 4WH, Storage LLC, and Francis were authorized to demolish the building, then they could not be liable for trespass as a matter of law. *Estes*, 2016-Ohio-8231, at ¶ 16 (12th Dist.). Accordingly, we find no error in the trial court's decision to grant summary judgment in favor of 4WH, Storage LLC, and Francis on Holdings' trespass claim.

**b. Holdings' Negligence Claims Against 4WH, Storage LLC, and Francis**

**i. Applicable Law**

{¶ 88} The elements of a negligence claim are (1) that the tortfeasor owed the injured party a duty of care, (2) that the tortfeasor breached the duty of care, and (3) injury as a direct and proximate result of the tortfeasor's breach. *Colwell v. Bob & Shawn Enterprises, L.L.C.*, 2026-Ohio-976, ¶ 17 (12th Dist.). The duty element of negligence is a question of law for the court to determine. *Id*. at ¶ 18.

**ii. Analysis**

{¶ 89} As set forth previously, Holdings brought claims for negligence against 4WH, Storage LLC, and Francis. The trial court found that Holdings had not set forth any legal argument concerning a duty 4WH, Storage LLC, and Francis owed it not to demolish the building and that it had therefore not met its reciprocal burden of demonstrating a genuine issue of fact or law for trial as to its negligence claim.

{¶ 90} On appeal, Holdings argues that the trial court's conclusion that Holdings failed to meet its burden of production on duty was erroneous because the court failed to realize that Holdings' negligence and trespass claims "go hand-in-hand" and were argued together.

{¶ 91} Holdings argues that 4WH, Storage LLC, and Francis owed it a legal duty to "verify ownership of the property before demolishing it." Holdings cites *Young v. Linden*, 130 Ohio App.3d 1, 6 (8th Dist.1998) in support of this duty.

{¶ 92} Holdings argues that it never consented to the demolition of the Dollar Tree Building and 4WH, Storage LLC, and Francis never warned or communicated that they intended to demolish the building. As a result, Holdings argues that 4WH, Storage LLC, and Francis, through Eagle, breached their duty of care by causing the destruction of the

Dollar Tree Building, resulting in damages to Holdings in the form of its loss of the property.

{¶ 93} Our conclusion that 4WH, Storage LLC, and Francis were authorized to demolish the Dollar Tree Building, through the Authorization Letter, the MIAA, and the parties' discussion through counsel (as set forth above), is dispositive of any claim that 4WH, Storage LLC, and Francis owed Holdings a duty to verify ownership and notify Holdings prior to demolishing the building. This is not a situation where the parties were unfamiliar with one another and 4WH, Storage LLC, and Francis directed Eagle to go onto an unfamiliar property and demolish buildings. Instead, these were two sophisticated parties who executed an agreement providing that one party would complete a previously planned joint development, which plans included the demolition of certain structures. As such, we find no merit to the argument that the trial court erred in granting summary judgment in favor of 4WH, Storage LLC, and Francis on Holdings' negligence claims.

{¶ 94} We overrule Holdings' sole assignment of error.

### B. 4WH and Storage LLC's Arguments on Appeal

{¶ 95} 4WH and Storage LLC's Assignment of Error states:

> THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO DEFENDANTS ON THE FRAUDULENT CONCEALMENT PORTION OF PLAINTIFFS' FRAUD CLAIM.

{¶ 96} 4WH and Storage LLC argue that the trial court erred in dismissing their fraudulent concealment claim against Holdings. They argue that fraudulent concealment was only a portion of their claim for fraud in Count One. 4WH and Storage LLC argue that if the court determined that there were questions of fact as to whether Holdings and Luke made fraudulent representations as to the condition of the storage building, then questions of fact also exist as to whether Holdings and Luke fraudulently concealed that

they were engaged in acts of self-dealing when contracting with companies owned by the Williams family.

## 1. Background

{¶ 97} In Count One of their amended complaint, 4WH and Storage LLC alleged two different theories of liability with respect to their fraud claim: one theory concerning fraudulent concealment, and the other concerning fraudulent misrepresentation. First, 4WH and Storage LLC alleged that Luke, on behalf of Holdings, had a duty to "disclose to [Storage LLC], but concealed the fact that . . . it was hiring and paying companies under common or familial ownership with Holdings." Second, 4WH and Storage LLC alleged that Luke, on behalf of Holdings, "falsely represented to [Storage LLC] that the contractors knew what they were doing and that the roof and building envelope were in excellent condition, but he knew or should have known that one or more of the contractors . . . were not qualified, the construction work was defective, and the roof and building envelope remained in terrible condition."

{¶ 98} As described previously, the trial court found genuine issues of fact for trial on the fraudulent misrepresentation aspect of 4WH and Storage LLC's claim in Count One. The court, however, granted summary judgment in Holdings' favor on 4WH and Storage LLC's claim that Holdings failed to disclose—or concealed—the familial relationships between Holdings and Cobblestone, M&H, L&L, and KIF. The court noted that 4WH and Storage LLC failed to identify any duty on behalf of Holdings and Luke to disclose this information. Nor had 4WH and Storage LLC established any resulting damages.

## 2. Analysis

{¶ 99} In its summary judgment decision on the fraud claim, the trial court appears to have narrowed the scope of Count One of the Amended Complaint. That is, the

summary judgment ruling appears to have had the effect of limiting the evidence and issues that would be presented at trial to the issues involving misrepresentation concerning the roof and façade conditions. Such a decision—granting summary judgment on part, but not all, of a claim—is explicitly authorized by law. *See* Civ.R. 56(A) ("A party seeking to recover upon a claim . . . may move with or without supporting affidavits for a summary judgment in the party's favor as to all *or any part of the claim* . . . .) (Emphasis added.)

{¶ 100}  An order which adjudicates one or more but fewer than all the claims or rights and liabilities of fewer than all the parties must meet the requirements of both R.C. 2505.02 and Civ.R. 54(B) in order to be final and appealable. *Noble v. Colwell*, 44 Ohio St.3d 92, 96 (1989). The trial court included Civ.R. 54(B) language in its written entry on the competing motions for summary judgment.

{¶ 101}  Civ.R. 54(B) states:

> Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, *the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay*. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added.)

{¶ 102}  The trial court's decision only limited the scope of Count One of 4WH and Storage LLC's amended complaint and that count remains pending for trial. Therefore,

the court did not enter "final judgment" on Count One and it is subject to revision. Civ.R. 54(B).

{¶ 103} As a result, Civ.R. 54(B) has no applicability and the trial court's decision (with respect to Count One) is not a final, appealable order. *See NAACP v. Riedel*, 2003-Ohio-6070, ¶ 6-7 (2d Dist.), citing *Hitchings v. Weese*, 77 Ohio St.3d 390, 391, 1997-Ohio-290 (Resnick, J., concurring) (noting that a ruling which adjudicates only part of a claim is not a final, appealable order); *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 2002-Ohio-3704, ¶ 35, fn. 9 (4th Dist.) (recognizing that Civ.R. 54[B] does not apply when part of a claim remains pending). *See also Noble*, 44 Ohio St.3d at 96 (finding that where the issue of liability had been determined but a factual adjudication of relief was unresolved, the finding of liability is not a final appealable order even if Civ.R. 54[B]) language is employed). In other words, while Civ.R. 56(A) permits a court to issue summary judgment with regard to part, but not all, of a claim, Civ.R. 54(B) does not authorize an interlocutory appeal of a summary judgment entered with regard to only part of a claim.

{¶ 104} Because the trial court did not completely dispose of Count One of 4WH and Storage LLC's amended complaint, its decision with regard to that claim is not appealable on an interlocutory basis, and this court lacks jurisdiction as to this aspect of the appeal. We therefore find 4WH and Storage LLC's assignment of error moot.

**IV. Conclusion**

{¶ 105} The trial court properly found that no genuine issues of fact or law existed for trial on Holdings' trespass and negligence claims against 4WH, Storage LLC, and Francis, and properly entered summary judgment in favor of 4WH, Storage LLC, and Francis. The trial court's summary judgment decision did not dismiss Holdings' trespass claim against Eagle and that claim remains pending before the trial court. Finally, we find

we lack jurisdiction to render a decision on 4WH and Storage LLC's fraud claim because there has been no final order issued in conjunction with that claim.

{¶ 106}  Judgment affirmed and cross-appeal dismissed.

HENDRICKSON, P.J., and PIPER, J., concur.

---

# J U D G M E N T   E N T R Y

Appellants/cross-appellees assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed. Appellees/cross-appellants assignment of error is moot, and the cross-appeal is dismissed for lack of a final appealable order.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to appellants and 50% to appellees.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Matthew R. Byrne, Judge*